52 383
80 644
52 383
84 640

JAMES T. STOVALL ET AL. V. N. M. CARMICHAEL.

1. TRESPASS TO TRY TITLE—TENANT IN COMMON.—Prior to the adoption of the Revised Statutes, a tenant in common might recover the entire premises as against a mere wrong-doer, although the petition failed to disclose the extent of the plaintiff's interest, or that he was but a part owner.

2. TRESPASS TO TRY TITLE—LIMITATION.—The institution of a suit in trespass to try title, in 1876, by a part owner of land, there being nothing in the petition to indicate that it was brought also in behalf of any other part owner, did not operate to stop the running of the statute of limitation as against others than himself.

3. CASE APPROVED.—Burleson v. Burleson, 28 Tex., 410, approved.

4. TENANT IN COMMON — LIMITATION.—Where one of two tenants in common is under some disability which prevents the running of limitation against him, the other tenant is not protected from the effect of limitation ; and in such case the party under disability, and not barred, can recover only his own moiety.

5. TENANT IN COMMON—ESTOPPEL.—While the beneficial acts of a tenant in common will inure to the benefit of his co-tenants, as will his own, in the absence of evidence to the contrary, it is also true that by the institution of an unsuccessful suit he binds no one but himself, and other joint owners are not estopped by a judgment against him.

6. TENANT IN COMMON—JUDGMENT.—In a suit by one tenant in common against another, the judgment should leave both in possession, since neither is entitled to exclusive possession. Prior to the adoption of the Revised Statutes, a plaintiff who established an undivided, though indefinite, interest in land, was entitled to a judgment placing him in possession with the defendant, whose right to an interest in the land had also been established.

APPEAL from Fayette.    Tried below before the Hon. L. W. Moore.

Suit in trespass to try title, as well as for damages, brought by James T. Stovall, in the District Court of Fayette county, on the 24th day of April, 1876, against N. M. Carmichael, to recover three hundred and twenty acres of land situated in Fayette county, patented to the heirs of M. B. Tatum on March 7, 1867.

On May 13, 1878, Archibald Stovall and twelve others came in and made themselves parties plaintiff, claiming interests in the land in controversy as tenants in common with the original plaintiff.

In a second supplemental petition the minority and marriage of some of the plaintiffs were set up.

The pleading of the defendant consisted of a general demurrer, general denial, and plea of not guilty, and subse-

quently pleas of the three, five, and ten years' statute of limitations and the suggestion of improvements made in good faith.

On the 31st day of May, 1878, a jury was waived, the cause submitted to the court, and a judgment rendered in favor of the defendant. The motion for a new trial having been overruled, the plaintiffs appealed.

The evidence in behalf of the plaintiffs showed that Joseph B. Tatum and his brother, M. B. Tatum, were killed at Fannin's massacre, on the 27th day of March, 1836; that the land in controversy was granted to the heirs of M. B. Tatum because of his military services; that they were unmarried, had no brother or sister living, and that their parents and grandparents on their father's side were dead, and that they left uncles and aunts on the paternal side, from whom the plaintiffs are descended, they being first and second cousins of J. B. and M. B. Tatum.

· The defendant's evidence, under his plea of limitation, showed that H. M. Carmichael conveyed the land to the defendant, N. M. Carmichael, on February 16, 1874, and the deed was recorded October 24, 1876; that under a location and survey H. M. Carmichael had gone into possession of the land in the year 1858, and possession had ever since been retained.

David C. Cobb, a witness for the defendant, testified that the parents and grand-parents of J. B. and M. B. Tatum were dead at the date of Fannin's massacre; that they had neither wives nor children, but that they left an only sister, named Mary C. Tatum, whom he married on March 8, 1838, and who died on September 11, 1840, leaving no children surviving her.

There was much testimony tending to show heirship in the plaintiffs, but nothing clearly establishing the identity of all the heirs who might have been entitled to an interest in the estate.

*Timmons & Brown*, for appellants.

I. If the evidence of the plaintiffs to show their heirship is

accepted, then the judgment is erroneous.    (1 Greenl., (Red-field's ed.,) secs. 103–106.)

II. If the evidence of the defendant be accepted to its fullest extent, then the judgment is erroneous.   (Hart. Dig., arts. 577, 581; Paschal's Dig., arts. 4038, 4040, 4057, 4064, 4067, 4068, 4157, 4158, 4161.)

III. If M. B. Tatum left no sister, then under the law in force at his death, on March 27, 1836, when the descent was cast, his property passed to his uncles and aunts, and through them to the plaintiffs.   (Hart. Dig., arts. 577, 581.)

IV. But if M. B. Tatum left a sister, and she married David C. Cobb, and died without issue, on September 11, 1840, then under the law in force at that date the said Cobb could take no interest in M. B. Tatum's land, or in the right of said Tatum's heirs, to receive land from the Republic or the State of Texas, on account of military services by him rendered. (Hart. Dig., arts. 577, 581.)

V. Lands granted by the Republic or by the State of Texas to the heirs of men who fell during the Texan war for inde-pendence, go, under the law, to such heirs, if they can be found, and not to David C. Cobb, who claims to have been the hus-band of one of the heirs.   (Paschal's Dig., arts. above cited.)

*Teichmuller, Dunn & Meerscheidt,* for appellee.

I. One or more of several tenants in common may sue a stranger to recover land, but under some necessary restrictions, viz.:

1. The rights of all the tenants in common must be accu-rately alleged, so that they are capable of being ascertained and judicially determined.

2. The suit must be in such form that its result concludes the tenants in common who are not parties, and that the de-fendants are not liable to be subjected to several successive suits.

3. One or more parties cannot sue for themselves and the benefit of an indefinite number of unknown heirs.

4. The plea of disability, in avoidance of the plea of limitation, cannot impair the force of limitation in favor of the defendants as to those co-tenants who are not parties to the suit.

5. One or more of several tenants in common suing for land can only have a *pro-rata* recovery of mesne profits and incidental damages.

The record discloses that the plaintiffs are only a few of a large and unascertained number of persons who sustain the same relationship to M. B. Tatum, deceased, as first and second cousins. (Croft v. Rains, 10 Tex., 520; Grassmeyer v. Beeson, 18 Tex., 767; Watrous v. McGrew, 16 Tex., 511; Presley v. Holmes, 33 Tex., 478.)

The foregoing and some later cases merely recognize the well-settled doctrine, that one of several tenants in common may alone sue a trespasser; but the issues presented in those cases did not require a full discussion of the doctrine in all its bearings and practical results. (1 Wash. on Real Prop., 4th ed., sec. 18, pp. 665, 666, note 1, and authorities there cited; M'Fadden v. Haley, 2 Bay, 457; Winstanley v. Meacham, 58 Ill., 98.)

II. Mary C. Tatum, the only surviving sister of M. B. Tatum at the time of his death, was his only heir, and his estate descended to her at the date of his death, and the plaintiffs, if at all, can only recover as her heirs. (Warnell v. Finch, 15 Tex., 163; Hornsby v. Bacon, 20 Tex., 558; Barclay v. Cameron, 25 Tex., 242; Paschal's Dig., arts. 4067, 4068.)

III. The burden of proving all facts necessary to show title in themselves, rests upon the plaintiffs in suits of trespass to try title.

IV. Mary C. Tatum was a native of the State of South Carolina, and died therein on the 11th of September, 1840, and the laws of that State governing the descent of property belonging to her estate, it was incumbent on the plaintiff to prove. (Keyser v. Pilgrim, 25 Tex. Supp., 220; Claiborne v. Tanner, 18 Tex., 77; Hopkins v. Wright, 17 Tex., 30.)

V. The benefit or bounty conferred by law upon the heirs of M. B. Tatum was, at the time of the latter's death, and also at the time of the death of his only heir, Mary C. Tatum, an inchoate right, a chose in action, in the nature of personal property, not realty. (Peevy v. Hurt, 32 Tex., 150; Smith v. Sublett, 28 Tex., 171; Randon v. Barton, 4 Tex., 295.)

VI. The filing of the original petition by James T. Stovall, on the 30th of September, 1876, arrests limitation only as to himself; limitation runs against the other plaintiffs until they became parties plaintiff on the 16th day of May, 1878. (Angell on Lim., 6th ed., sec. 484, p. 495.)

The continuous adverse possession of the two Carmichaels, successively, is for a period of eighteen years before the filing of the original petition, and twenty years prior to the filing of the petition of additional plaintiffs. Their title by prescription is perfect.

VII. If the defendant's title by prescription is sustained against the plaintiffs who became parties May 13, 1878, partition of the land becomes necessary, involving the judicial determination of the rights of all parties in interest, and there are no allegations upon which a proper judgment could be predicated.

GOULD, ASSOCIATE JUSTICE.—There was evidence under which the court may well have held that Mary C. Tatum was the only surviving sister of M. B. Tatum, and that in default of children, parents, or grand-parents, she was, under the law in force in March, 1836, his sole heir. But she died childless in September, 1840, and the evidence is certainly sufficient to show that some of the plaintiffs are part heirs of her estate. Under the law of descent of this State in force at her death, and, so far as the record discloses, controlling the question, her husband inherited no part of her estate, but in default of children, brothers or sisters, or their descendants, or grand-parents, it was to be divided into two equal parts, one of which passed to the descendants of the paternal, and the other to the descendants of

the maternal grand-parents. (Hart. Dig., art. 577.) We have
not felt called on to examine critically the evidence with the
view of ascertaining whether all of the plaintiffs have estab-
lished an interest in the estate of M. B. Tatum, or the estate
of Mary C. Tatum or Mary C. Cobb. There is evidence that
there are descendants of the maternal grand-parents of M. B.
and Mary C. Tatum still living, but not joining in the suit.
Outside of this, the evidence fails to show the amount of the
interest of any one of the plaintiffs. Take, for example, the
original plaintiff, James T. Stovall. His father, A. L. Stovall,
was one of six children of a paternal aunt of M. B. and Mary
C. Tatum, said aunt having died before 1836. As one of the
heirs of his father, A. L. Stovall, who was, it may be assumed,
in right of his deceased mother, one of the heirs of either
M. B. or Mary C. Tatum (Cobb), James T. Stovall has an in-
terest in the estate of either, but what the amount of that
interest is, did not appear on the trial.

As against a trespasser, a tenant in common may recover
the entire premises; and although the statutes, as recently re-
vised, require the claimant of an undivided interest to state
the same and the amount thereof, the rule which prevailed
at the time of the trial was that the owner of an undivided
interest might recover of a wrong-doer, although the petition
failed to show that he was only part owner. (Rev. Stats., art.
4786; Croft *v.* Rains, 10 Tex., 523; Watrous *v.* McGrew, 16
Tex., 510; Grassmeyer *v.* Beeson, 18 Tex., 766; Presley *v.*
Holmes, 33 Tex., 478; Hutchins *v.* Bacon, 46 Tex., 414.)

We are, however, of opinion that the defense of limitation
under the statute of ten years was fully made out against those
plaintiffs who did not become parties until May 13, 1878, and
who failed to allege and show themselves within some of the
exceptions to the statute.

Our opinion is, that the institution by James T. Stovall of
an ordinary suit of trespass to try title, there being nothing to
indicate that the suit was brought on behalf of any other part
owner, did not operate to stop the running of limitation against

others than himself. Such was the rule recognized and enforced by this court in Burleson v. Burleson, 28 Tex., 410, and we have been cited to no opposing decision here or elsewhere. A somewhat analogous case is where one of two tenants in common is under a disability which prevents the running of limitation against him. The rule seems to be, that if the other tenant in common might have sued alone, (as undoubtedly he might in this State,) he is not protected from the effect of limitation, and that in such case the party under disability, and not barred, can recover only his own moiety. (Freem. on Coten., sec. 377; Ang. on Lim., sec. 484; Doe on the demise of Langdon v. Rawlston, 2 Taunt., 441.)

True, the entry of one tenant in common is *prima facie* the entry of all. Should one recover possession of a wrong-doer by suit, in the absence of something to show a different intention he would still be presumed to take possession for all. It will not be presumed that he acts in bad faith towards his co-tenant. As between him and other joint owners, his beneficial acts will inure, not to his exclusive benefit, but to the benefit of all. But it is also true, that by the institution of an unsuccessful suit he binds no one but himself. Other joint owners are not estopped by a judgment against him. (Freem. on Coten., sec. 168 and ref.)

It would seem to follow, that his institution of a suit in his own behalf would not stop limitation as to any one save himself.

As to some of the plaintiffs, the defense of limitation was complete, and the defendant, as to the other plaintiffs, was entitled to retain possession jointly with them. In case of a suit by one tenant in common against another, the judgment should leave both in possession, for neither is entitled to exclusive possession. (Freem. on Coten., sec. 293 and ref.)

Those of the plaintiffs who had established an undivided, though indefinite, interest in the land, were at the time entitled to a judgment placing them in possession with defendant. On another trial the rule prescribed in the revised code would

prevail, and require the amount of interest claimed to be stated.

It is unnecessary to consider the propositions submitted by appellee based on the assumption that the common law prevails in South Carolina, as the record contains no evidence on the subject, and the presumption is that the law is the same as in this State.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 13, 1880.]